UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN VANDIVIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12-cv-00260-TWP-DML |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant the United States of America's ("the United States") Motion for Summary Judgment. Plaintiff John Vandivier ("Mr. Vandivier"), filed this action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"), alleging that medical treatment he received from the Department of Veterans Affairs at the Roudebush Veterans Administration Medical Center, Indianapolis ("VA") constituted malpractice and caused him to have a stroke, resulting in permanent injuries and impairments. For the reasons set forth below, the United States' motion (Dkt. 29) is **GRANTED**.

**I.    BACKGROUND**

The following material facts are not disputed and are viewed in the light most favorable to Mr. Vandivier as the non-moving party. Mr. Vandivier was a patient of Dr. Sheldon Friedman ("Dr. Friedman"), a board-certified cardiologist who Mr. Vandivier saw for treatment of his heart disease. Dr. Friedman practiced at the Hamilton Heart Center, and he was not employed by or affiliated in any way with the VA. From August through December 2006, the relevant time frame of his Complaint, Dr. Friedman was Mr. Vandivier's cardiologist. Mr. Vandivier's primary care physician, Dr. Usha Subramanian ("Dr. Subramanian"), was employed by the VA.

On or about August 10, 2006, Dr. Friedman prescribed Mr. Vandivier Plavix 75 mg and a baby aspirin once a day.  On August 25, 2006, Mr. Vandivier contacted Dr. Friedman's office and reported that he had run out of his supply of Plavix.  He called Dr. Friedman's office again on August 28, 2006 and stated that he could not afford his medication and was not sure whether he would be able to obtain Plavix through the VA.  Dr. Friedman's office discussed an indigent drug program with Mr. Vandivier, and the office submitted an indigent request for Plavix, signed by Mr. Vandivier on August 30, 2006, to the Bristol-Myers Squibb Patient Assistance Foundation. Mr. Vandivier's request was approved on August 31, 2006.  The indigent drug program would have allowed Mr. Vandivier to receive Plavix through Dr. Friedman's practice for up to one year.

On August 31, 2006, Mr. Vandivier had a conversation with Dr. Subramanian regarding his request to obtain Plavix through the VA.  Dr. Subramanian advised Dr. Vandivier that he did not meet the clinical standards for a prescription of Plavix for his cardiac care, and offered a referral to a cardiologist at the VA for a second opinion.  Mr. Vandivier did not accept the referral.  Mr. Vandivier advised his primary care physician, Dr. Subramanian, that he was being provided Plavix through his outside cardiologist's office.

On October 5, 2006, Dr. Subramanian told Mr. Vandivier that Plavix was not medically indicated for cardiac reasons and advised Mr. Vandivier to take adult aspirin alone, but noted that Mr. Vandivier was currently taking Plavix which he obtained from a non-VA source.  Mr. Vandivier never had a prescription for Plavix provided by any doctor with the VA.  Following his conversations with Dr. Subramanian, Mr. Vandivier stopped taking Plavix and threw away his remaining supply of the medication.  Unfortunately, Mr. Vandivier suffered a stroke on December 16, 2006.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat the motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties . . . nor the existence of some metaphysical doubt as to the material facts . . . is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

Mr. Vandivier argues that Dr. Subramanian breached the standard of care for treatment of his heart disease when she recommended that he take adult aspirin instead of a combination of baby aspirin and Plavix. The United States asserts that Dr. Subramanian and the VA did not

breach the standard of care, and that there is no evidence that Mr. Vandivier's failure to take Plavix caused his stroke.

Claims brought under the FTCA require a showing that "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346. Because the events giving rise to this claim occurred in Indiana, Indiana medical malpractice law would apply. "In order to bring a claim in Indiana for medical malpractice, a plaintiff must establish that the defendant (1) owed the plaintiff a duty of care; (2) breached its duty by conduct falling below the standard of care; and (3) proximately caused a compensable injury through the breach of duty." *Musser v. Gentiva Health Svcs.*, 356 F.3d 751, 760 (7th Cir. 2004). "A plaintiff must present expert testimony to establish the applicable standard of care and to show whether the defendant's conduct falls below the standard of care." *Id.* (citing *Narducci v. Tedrow*, 736 N.E.2d 1288, 1292 (Ind. Ct. App. 2000)). The United States asserts that Mr. Vandivier has failed to properly disclose any experts for his case, thus he cannot meet his burden of showing the appropriate standard of care and whether the United States' conduct, acting through Dr. Subramanian, fell below the standard of care and caused his injury.

**A.      Expert Disclosures under Federal Rule of Civil Procedure 26(a)(2)**

Federal Rule of Civil Procedure 26 requires that litigants disclose the names of witnesses by the deadlines established by the court. Fact witnesses must be disclosed by sending to the opposing party the name, address, and phone number of each potential witness. Fed. R. Civ. P. 26(a)(1)(A). Expert witnesses include those individuals whose testimony consists of opinions based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2). In general, Federal Rule of Civil Procedure 26(a)(2)(A) states that, in addition to the

information required to be disclosed for fact witnesses under Rule 26(a)(1)(A), a party must disclose the identity of any person who may be used at trial to present expert testimony on or before the expert disclosure deadline. *Musser*, 356 F.3d at 756-57. For expert witnesses who have been retained or specially employed for trial to provide expert testimony, the party is required to include a written report containing a complete statement of all the opinions to be expressed and the bases and reasons supporting those opinions in the disclosure. Fed. R. Civ. P. 26(a)(2)(B). For all witnesses offering expert testimony who are not required to file a report, *i.e.* expert witnesses who were not specially employed for litigation, the party still must provide a disclosure stating the subject matter on which the witness is expected to testify, and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). All of these disclosures should be in writing, signed by counsel, and served to opposing counsel by the deadline for expert disclosures set by the trial judge under Rule 26(a)(2)(D). Fed. R. Civ. P. 26(a)(4).

A treating physician may be called upon to provide expert testimony if he or she is providing opinions based upon specialized knowledge, even if those opinions were formed during the course of the plaintiff's treatment. *See O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 n.14 (7th Cir. 1994) ("[W]e do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation."). In those instances, the party seeking to use the treating physician's expert testimony must provide a disclosure to the opposing party; however, the written report requirement does not apply. *Musser*, 356 F.3d at 757. Nevertheless, the party must still comply with Rule 26(a)(2)(C) and include in the disclosure the subject matter and a summary of the facts and opinions to which the

treating physician is expected to testify. Failure to disclose a treating physician as an expert will permit them to testify only as a fact witness, not an expert witness. *Musser*, 356 F.3d at 758.

The United States asserts that Mr. Vandivier failed make the disclosures required by Rule 26(a)(2)(C) as to expert opinions provided by his treating physicians. Mr. Vandivier filed notice of his expert disclosures on July 3, 2013, which is prior to the expert disclosure deadline of July 5, 2013 set forth in paragraph III.F of the Case Management Plan. Dkt. 11 at 3. However, paragraph III.G of the Case Management Plan states

> [i]f a party intends to use expert testimony in connection with a motion for summary judgment to be filed by that party, such expert disclosures must be served on opposing counsel no later than 60 days prior to the dispositive motion deadline. If such expert disclosures are filed the parties shall confer within 7 days to stipulate to a date for responsive disclosures (if any) and completion of expert discovery necessary for efficient resolution of the anticipated motion for summary judgment.

Dkt. 11 at 4. The dispositive motion deadline was May 6, 2013, and paragraph IV.A states that the United States did anticipate filing a motion for summary judgment. The United States filed its notice of disclosure of expert witnesses on February 28, 2013. Dkt. 22. The United States counsel says he attempted to contact Mr. Vandivier's counsel twice about a conference pursuant to paragraph III.G of the Case Management Plan to stipulate to a date for Mr. Vandivier to submit his expert disclosures, but such conference never occurred. Dkt. 40 at 4. The United States pointed out in its brief in support of summary judgment that Mr. Vandivier failed to disclose Dr. Friedman as an expert, and properly objected to Mr. Vandivier's use of expert testimony in its reply brief due to his failure to disclose these witnesses as experts. *See* Dkt. 11 at 4, ¶ III.H. In his response, Mr. Vandivier did not address his failure to disclose his expert witnesses prior to the dispositive motion deadline, nor did he file a motion for leave to file a surreply to respond to the United States' objections. Therefore, the Court finds that Mr.

Vandivier failed to disclose his expert witnesses at the times and in the sequence ordered by the Court in accordance with Rule 26(a)(2)(D).

The sanction for the failure to disclose experts under Rule 26 is exclusion of the purported expert's testimony under Rule 37(c)(1). The exclusion of non-disclosed evidence is automatic and mandatory under this rule, unless non-disclosure was justified or harmless. *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996). The United States asserts, and Mr. Vandivier does not dispute, that he did not disclose Dr. Friedman, Dr. Anthony Cossell ("Dr. Cossell"), or Dr. Charles Simack ("Dr. Simack") as expert witnesses by the deadline set forth in the Case Management Plan (Dkt. 11 at 4), nor does he offer any explanation or justification for his failure to do so. Mr. Vandivier also does not argue that the non-disclosure was harmless. The United States argues, and the Court agrees, the non-disclosure was not harmless to the United States, as it denied them the opportunity to question Mr. Vandivier's doctors in their expert capacities, or challenge their testimony under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Given the necessity for expert testimony in medical malpractice cases under Indiana law, Mr. Vandivier should have known that expert testimony was crucial to his case, and the issue of causation would likely be contested on summary judgment. Because Mr. Vandivier has presented no substantial justification for his failure to disclose Dr. Friedman, Dr. Cossell, and Dr. Simack as experts, the Court must find that such failure was not harmless to the United States and this evidence must be excluded under Rule 37(c)(1). Therefore, the Court may not consider the expert opinions of Mr. Vandivier's treating physicians regarding standard of care and causation, and they may only serve as fact witnesses in this case.

**B.     Indiana Malpractice Law**

Mr. Vandivier essentially asks the Court to conclude that, because he had a stroke a few

months after he stopped taking Plavix, Dr. Subramanian, acting on behalf of the United States, must have been negligent in her failure to prescribe Plavix and her recommendation that he take only aspirin, and that such negligence is the cause of his injuries. He also argues that Dr. Subramanian failed to give him the "best" treatment for his cardiac conditions. However, "the mere fact that an injury occurred will not give rise to a presumption of negligence." *Narducci*, 736 N.E.2d at 1292. Additionally, physicians are not required to provide the "best" or perfect care; rather, "the doctor must exercise the degree of skill and care ordinarily possessed and exercised by a reasonably skillful and careful practitioner under the same or similar circumstances." *Id.* Mr. Vandivier must be able to establish the applicable standard of care and show that the United States breached that standard; an inference of negligence will not arise simply because there is a bad result without proof of some negligent act. *Id.*

As previously stated, Mr. Vandivier must have an expert to prove the issues of the appropriate standard of care and whether the United States' conduct fell below that standard of care. Indiana law does recognize a "common knowledge" exception to the rule that expert testimony is necessary in medical malpractice cases. A plaintiff is not required to present expert testimony in order to prove a breach of the standard of care where "the defendant's conduct is 'understandable without extensive technical input' or 'so obviously substandard that one need not possess medical expertise to recognize the breach.'" *Gipson v. United States*, 631 F.3d 448, 451 (7th Cir. 2011) (quoting *Narducci*, 736 N.E.2d at 1293) (additional citations omitted). This exception has typically been used in cases in which obvious mistakes have been made in surgery. *See Weinberg v. Geary*, 686 N.E.2d 1298, 1302 (Ind. Ct. App. 1997) (exception has "typically been limited to cases involving the failure of an operating physician to remove some surgical implement or other foreign object from the patient's body.").

This is not an appropriate case to apply the "common knowledge" exception to the expert testimony requirement. The standard of care for a physician treating Mr. Vandivier's individual medical conditions and the cause of his stroke are not within the general understanding of laypeople. *Cf. Gipson*, 631 F.3d at 452 (expert was not required where no technical issues needed to be resolved to determine the standard of care). Medical expertise is required to understand the appropriate standard of care for treating Dr. Vandivier's heart disease, and to understand the possible causes of his stroke. *See Narducci*, 736 N.E.2d at 1293 ("[E]xpert opinion is required 'when the question involves the delicate inter-relationship between a particular medical procedure and the causative effect of that procedure upon a given patient's structure, endurance, biological make-up, and pathology.'") (quoting *Malooley v. McIntyre*, 597 N.E.2d 314, 319 (Ind. Ct. App. 1992)).

Because Mr. Vandivier has not presented any admissible expert testimony as required by Indiana malpractice law, he cannot establish that there is a question of fact regarding whether the United States, through the VA and Dr. Subramanian, breached the applicable standard of care. Because Mr. Vandivier cannot establish a necessary element of his claim as a matter of law, summary judgment is appropriate.[1]

---

[1] The United States also argues that Mr. Vandivier was contributorily negligent in his failure to advise Dr. Friedman that he had ceased taking Plavix, his choice to throw away his remaining supply of Plavix and not obtain additional supply through Dr. Friedman, and his failure to accept Dr. Subramanian's referral to a VA cardiologist. Even if the Court had not found that Mr. Vandivier cannot establish an essential element of his claim, the issue of contributory negligence would bar his claim. Mr. Vandivier does not dispute that he failed to consult with the cardiologist he had chosen to treat his heart disease and who had prescribed the Plavix. Under the Indiana Medical Malpractice Act and Indiana Law, contributory negligence on the part of a plaintiff in a medical malpractice case is a complete bar to recovery. *Caverns v. Zaberbac*, 849 N.E. 2d 526,529 (Ind. 2006).

## IV. CONCLUSION

For the forgoing reasons, the United States' Motion for Summary Judgment (Dkt. 29) is **GRANTED**, and Mr. Vandivier's claim is **DISMISSED**.

**SO ORDERED.**

Date: 11/16/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov

James E. Ayers
WERNLE RISTINE & AYERS
ayersj@wralaw.com